(70 Misc. Rep. 404.)

### SPECHT v. WATERBURY CO.

(Supreme Court, Trial Term, Kings County. January, 1911.)

1. TRIAL (§ 165*)—MOTION FOR NONSUIT—DETERMINATION AFTER VERDICT—DISAGREEMENT—STATUTES.

Code Civ. Proc. § 1187, provides that, after a jury shall have rendered a special verdict, the court may then pass on a motion for nonsuit, or direct such general verdict as either party may be entitled to. *Held* that, where motions for nonsuit and to direct a verdict were reserved

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

until after a special verdict had been taken, the fact that the jury disagreed did not prevent the determination of such motion.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 373, 374; Dec. Dig. § 165.*]

**2. NEGLIGENCE (§ 136\*)—INJURIES TO CHILDREN—QUESTIONS FOR JURY.**

Where defendant's servant took certain inflammable waste materials from defendant's factory to an adjoining unfenced vacant lot, on a windy day, and set fire to the same, and plaintiff's female six year old child was burned by burning paper blown in her direction while playing near the fire, being attracted by it, defendant's negligence and the contributory negligence of the child and of her parents *held* for the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

Action by Henry W. Specht, as administrator, etc., of Magdalena Specht, deceased, against the Waterbury Company. Defendant's motion for nonsuit and for directed verdict denied.

Hugo Hirsch, for plaintiff.

Charles Capron Marsh, for defendant.

KELLY, J. On the trial of this action before the court and a jury, the defendant moved for a nonsuit at the end of plaintiff's case. The motion was denied, and the defendant duly excepted. The defendant then produced its witnesses and, at the conclusion of the testimony, renewed its motion to dismiss the complaint, and also moved for the direction of a verdict. The trial judge reserved decision on the motions and announced that he would take a special verdict under Code Civ. Proc. § 1187. Certain questions in writing were prepared and submitted to the jury bearing upon the questions of negligence and contributory negligence, and the jury were instructed that, if they answered the questions favorably to plaintiff's contention, they might proceed to assess damages. The jury failed to agree, and upon reporting their disagreement the defendant requested a decision upon the motion for a nonsuit and for the direction of a verdict, still undetermined. The counsel for defendant objects that, the jury having failed to agree, the court is without power to decide these motions. He urges that the Code provision cited is that:

"After the jury shall have rendered a special verdict upon such submission or shall have assessed the damage, the court may then pass upon the motion to nonsuit, or direct such general verdict as either party may be entitled to."

And he insists that, as the jury has not rendered a special verdict in this case, the motions fail with the disagreement.

In Russell v. Rhinehart, 137 App. Div. 843, 122 N. Y. Supp. 539, the Appellate Division in this department disapproved the practice of reserving decision on a motion for nonsuit, and granting such motion after a general verdict for the plaintiff, for the reason that, should the Appellate Court decide that the nonsuit is improper, the defendant is denied the right to have the trial judge pass upon a motion for a new trial under section 999 of the Code. In such case, notwithstanding the denial of the nonsuit, the defendant has the right to raise the question that the verdict is against the evidence, and, un-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

der the practice disapproved, he is denied a ruling upon this question. But no such criticism can apply to a case where the jury has failed to agree. It would be wrong, as has been said, to penalize the defendant because the jury has not been able to find a verdict. If the plaintiff has not made out a case, the defendant is entitled to a nonsuit, and, where there is no complication by reason of a finding by the jury, surely the trial judge must pass upon the motion upon which he has reserved decision. Under the provisions of section 1187, notwithstanding a special verdict from which it appears the jury is in favor of a plaintiff, the judge may still direct a verdict for the defendant. The power and duty of the court to decide the motion for nonsuit notwithstanding the disagreement appears to be affirmed in Butler v. Supreme Council, 43 App. Div. 531, 60 N. Y. Supp. 70, where Judge Woodward says:

"While the proceeding upon the part of the learned trial court was somewhat extraordinary, there does not appear to be any good reason why the court could not grant the motion of the defendant for the direction of a verdict or a dismissal of the complaint at any time before the jury had acted, if the evidence was not sufficient to justify a verdict for the plaintiff."

In McDonald v. Metropolitan Street Ry. Co., 46 App. Div. 143, 144, 145, 61 N. Y. Supp. 817, 819, the Appellate Division in the First Department affirmed a nonsuit after disagreement. Rumsey, J., says:

"Certainly, where the jury are unable to agree, it is neither unusual nor extraordinary for the justice presiding at the trial, if upon consideration he thinks the case a proper one, to direct a verdict dismissing the complaint. There was no irregularity therefore in the practice upon this trial."

This case was reversed in the Court of Appeals (167 N. Y. 66, 60 N. E. 282), but upon other grounds. In Paltey v. Egan, 200 N. Y. 83, 93 N. E. 267, the Court of Appeals apparently recognizes the right of a judge to pass upon a motion for nonsuit after verdict. I conclude, therefore, that the defendant is entitled to a decision upon the motion for nonsuit, notwithstanding the failure of the jury to answer the questions submitted to them.

Proceeding now to a consideration of defendants' motion, the plaintiff sues to recover damages for the loss of his six year old daughter, who was burned to death because of a fire kindled by the defendant upon a vacant lot opposite its factory on Waterbury street, Brooklyn. The lot was not fenced, the defendant had been in the habit of getting rid of its waste material, sweepings, rosin, oily paper, rubbish, etc., by carrying it over to the vacant lot and burning it. Defendants' employé was accustomed to carry over the material in barrels, piling it in the lot, setting it on fire, and returning from time to time to the factory across the street for a new supply. During his absence the fire was left unguarded. This practice had been going on for some time. The fire, on the day of the accident, was kindled within 10 or 12 feet of the street. There was a dispute as to who started the fire on the day in question. Defendants' employé denied that he lighted the fire; but plaintiff called a witness who testified that the employé in question was present feeding the fire with material. The

employé testified that he had been cautioned not to start a fire on a windy day, and that there was a wind blowing on the day in question. Plaintiff's witness testified that the wind carried the burning paper and material about; "it—the burning paper—was scattering all about the lot." The plaintiff's witness said that she was about seven feet from the fire when the little girl, now deceased, came over to her with a piece of wire asking the witness if it was copper. The witness noticed that the child's dress was on fire in the back. She endeavored to extinguish the flames. The child ran away. A man stopped her and endeavored to smother the fire, but the child was burned to death. The witnesses for plaintiff and defendant agree that the fires in the lot attracted children, men, boys, and girls. Children played in the lot, and they endeavored to pick copper out of the fire. Whether the little girl tried to pick copper out of the fire, and thus came in contact with the blaze, or whether the wind carried the burning paper against her dress, is not disclosed. I think the jury could have found either way. In my opinion, it is material mainly on the question of the negligence of the child, and with a six year old girl, I find it difficult to hold that she would be negligent as matter of law, even if it were proved that she caught fire while endeavoring to take wire out of the burning pile by means of a stick, which was the method used, as testified to by some of the witnesses.

In the case of Coleman v. Graves, 39 Misc. Rep. 85, 78 N. Y. Supp. 893, affirmed 97 App. Div. 411, 89 N. Y. Supp. 1040, relied on by defendant, and in which it was intimated that the danger of contact with fire was known to every man, the plaintiff was ten years old.

The case is difficult in both aspects—as to defendants' negligence, and the question of the contributory negligence of the parents of the child. Owing to the tender years of this child, I submitted the question whether she was sui juris to the jury—holding her, however, to the exercise of reasonable care if she was capable of caring for herself. The testimony of the father as to the permission given to the child to go to the lot in question, away from and out of sight of the home, without a companion, with knowledge on the part of the father that fires were burning at the place but without warning to the child, would raise serious question in my mind if I were sitting as a juryman. He had older children at home who might have been charged with the care of this six year old child. Still the question whether parents, in the circumstances of the plaintiff, are negligent in the way they care for their children, appears to be for a jury. The father and mother were both working; the mother assisting the father in his work at home as a buttonhole maker. The father appeared to be a respectable, intelligent man, and, while his action does not meet with my approval, I think it was for a jury to pass upon. I do not think the evidence justifies a claim that the parents were people in needy circumstances, nor do I subscribe for a moment to the suggestion that people of limited means are any less careful of their children than those in better circumstances; but it seems to me that a parent charged with contributory negligence, where the accident had such distressing results as in this case, is entitled to have the question passed upon by a jury.

The defendant insists that it was entitled to a nonsuit because the evidence failed to show negligence on its part. It is claimed that the doctrine of Walsh v. Fitchburg R. R. Co., 145 N. Y. 301, 39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615, is decisive in the case at bar, and that the defendant owed no duty "to those who had no business upon its land, who came there unasked, and whose presence was simply tolerated." For the purposes of this motion, I must assume that the lot in which the fire was kindled was owned by or in control of defendant. It is so alleged in the complaint.

Unless controlled by authority, I do not feel that I should apply the doctrine in the turntable case to the case at bar. I think there is a distinction between the use to which the owner put his property in that case and in Larmore v. Crown Point Iron Co., 101 N. Y. 391, 4 N. E. 752, 54 Am. Rep. 718, and similar cases, and the action of the owner in the case at bar. In the cases cited, the turntable and the machinery were the regular ordinary mechanical appendages to the defendants' business. The defendants were not accused of any active negligence. They did nothing to attract the plaintiffs beyond the maintenance of necessary appliances used in their work. The turntable in the Walsh Case was in a railroad yard; the machinery in the Larmore Case was in a factory where they had a right to be, and where they were not attractive or dangerous to any one upon the public highway. In Kane v. Erie R. R. Co., 110 App. Div. 7, 96 N. Y. Supp. 810, the pile of curbstones was an inert passive thing, dangerous to no one, unless interfered with. These cases and Kelly v. Smith, 29 App. Div. 346, 51 N. Y. Supp. 413, and Fitzgerald v. Rodgers, 58 App. Div. 298, 68 N. Y. Supp. 946, present situations where the defendant is conducting its business on private property, doing no affirmative act to entice the plaintiffs to leave a place of safety on the highway, and the facts show interference by the injured party, which is inexcusable from a legal point of view. It is difficult to apply the reasoning of these cases to the act of the defendant in lighting a bonfire within 10 feet of a street in an uninclosed lot where children were playing, on a windy day.

The decision in Travell v. Bannerman, 174 N. Y. 47, 66 N. E. 583, does not prevent a recovery in the case at bar. I think there was grave doubt in that case whether the negligence of the defendant was the proximate cause of the injury. After the defendant in that case threw the rubbish over the wall, the plaintiff took the cartridge out of the débris, removed it to the street, and was injured by an explosion caused by his careless manipulation of the explosive. I think it may well be urged that there was the intervention of an independent cause for which the defendant was not liable.

I am free to say, however, that the case of Coleman v. Graves, 39 Misc. Rep. 85, 78 N. Y. Supp. 893, affirmed 97 App. Div. 411, 89 N. Y. Supp. 1040, cited by the learned counsel for defendant, is very like the case at bar. It was tried in this county before Mr. Justice Nash, who dismissed the complaint, and his opinion in denying the motion to set aside the nonsuit, while placing the decision upon the doctrine of Walsh v. Fitchburg R. R. Co., supra., seems to rest the nonsuit principally upon the fact that the accident was one which was

not to be apprehended, and that the plaintiff was guilty of contributory negligence. And he says that the plaintiff knew that fire would burn, but did not think that her dress would take fire. It is said in the opinion at the Trial Term:

"While it might be apprehended that children playing upon the vacant lot of the defendant would play around the fire and even play with the fire, and, as urged on behalf of the plaintiff, be enticed to search in the hot ashes for the pieces of brass, the setting fire to a pile of shavings in the lot was not in the nature of a trap for the unwary; a child of nine years knows that fire will burn."

While the opinion in the Appellate Division, written by Mr. Justice Woodward, refers to the opinion at the Trial Term with approval, I cannot believe that the Appellate Court decided in the Coleman Case that the nine year old child was guilty of negligence as matter of law on the facts, even though she admitted that she was endeavoring to take out copper wire from the burning embers. But, in the case at bar, the child was six years old, hardly of the age when children are popularly said to have come to the use of reason, and yet old enough to follow the childish instinct which is attracted by a blaze—by a bonfire. In the case at bar, the defendant kindled this fire in an unfenced lot within a few feet of the sidewalk. It appears to me to be a very hard rule which holds that the question of his negligence is not to be submitted to a jury as against this six year old child. I doubt if an open box of poisoned candy with the contents conspicuously displayed towards the street would have any greater attraction to a six year old child than this fire.

I do not think the doctrine of Walsh v. Fitchburg R. R. Co., supra, applies to the case at bar, nor do I think the case of Coleman v. Graves, supra, is controlling. In this case the jury might have found upon the evidence that the fire was communicated to the child's dress from the burning paper carried about by the wind; the fire was kindled and fed so close to the highway that it must necessarily attract children from the sidewalk to the defendants' unfenced land. Mr. Justice Harlan, in writing the opinion of the Supreme Court of the United States in Union Pacific Railway Co. v. McDonald, 152 U. S. 280, 14 Sup. Ct. 626 (38 L. Ed. 434), says:

"Judge Thompson, in his work of the Law of Negligence, well says: 'It would be a barbarous rule of law that would make the owner of land liable for setting a trap thereon, baited with stinking meat, so that his neighbor's dog, attracted by his natural instincts, might run into it and be killed, and which would exempt him from liability for the consequences of leaving exposed and unguarded on his land a dangerous machine, so that his neighbor's child, attracted to it and tempted to intermeddle with it by instincts equally strong, might thereby be killed or maimed for life.' Indeed, the present case is stronger than the one supposed by the writer, in that the defendant was aware of the fact that children often visited its mine."

I do not think the doctrine of the Walsh and Coleman Cases should be extended to the facts in this case. To absolve the defendant from negligence as matter of law for building and maintaining this fire would seem to warrant the language used by Judge Thompson in his work on negligence (volume 1 [2d. Ed.] § 1026):

"This cruel and wicked doctrine, unworthy of a civilized jurisprudence, puts property above humanity, leaves entirely out of view the tender years and infirmity of understanding of the child, indeed, his inability to be a trespasser in sound legal theory, and visits upon him the consequences of his trespass as though he were an adult."

The motion for nonsuit is therefore denied.